IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CONCHITA M. TURPIN, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:10CV850–HEH
)
THE WELLPOINT COMPANIES, INC., *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
(Granting Defendant WellPoint's Motion to Dismiss; Dismissing Claim Against Defendant GCA)

This is a *pro se* action for damages alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1] It is presently before the Court on several motions to dismiss filed by The WellPoint Companies, Inc. ("WellPoint") and GCA Services Group, Inc. ("GCA" or, collectively with WellPoint, "Defendants").[2] For the reasons stated below, WellPoint's Motion to Dismiss will be granted, and Plaintiff's claim against GCA will be dismissed for failure to exhaust administrative remedies.

---

[1] Although Plaintiff's Complaint makes reference to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (*see* Pl.'s Compl. Ex. 2, at 13), Plaintiff does not appear to be alleging any violation of the FMLA.
[2] GCA was improperly sued as "GCA Services."

I.

On November 22, 2010, Conchita M. Turpin ("Plaintiff"), proceeding *pro se*, filed a motion for leave to proceed *in forma pauperis* against WellPoint and GCA. This Court granted Plaintiff's motion, and the Clerk filed Plaintiff's Complaint on December 2, 2010. Plaintiff's Complaint consists of five short paragraphs and a series of attachments.[3] She appears to allege as follows.

Plaintiff was allegedly employed by WellPoint as a data entry operator from in or about March 2000 to May 2007. On or about May 4, 2007, Plaintiff allegedly called her supervisor to advise that she was experiencing car trouble and would return to work the following day. On or about May 7, 2007, Plaintiff allegedly called to say that she would be late because she needed to pick up her vehicle from the repair shop. The next day, WellPoint allegedly terminated Plaintiff for "no call, no show." Plaintiff alleges that she had no prior warnings or write-ups from WellPoint.

Plaintiff filed an EEOC charge of discrimination against WellPoint on July 30, 2007, asserting that she "was harassed and discharged because of [her] age, 48, in

---

[3] Attached to Plaintiff's "Complaint" are: (1) a bill of particulars apparently filed in the City of Richmond General District Court; (2) pay stubs from WellPoint; (3) a notice from the Virginia Employment Commission regarding Plaintiff's unemployment benefits; (4) a letter from Plaintiff to the Commonwealth of Virginia in which Plaintiff expresses a desire "to appeal recent termination . . . with Wellpoint . . . ."; (5) an e-mail receipt of Plaintiff's resume submission to "ACS"; (6) a printout of unknown origin concerning certain payments and taxes; (7) a charge of discrimination filed by Plaintiff against GCA on September 8, 2010; (8) a charge of discrimination filed by Plaintiff against WellPoint on September 13, 2010; (9) a charge of discrimination filed by Plaintiff against Anthem Health Plans of Virginia on July 30, 2007; and (10) a notice of right to sue dated August 28, 2007.
  Virtually all of Plaintiff's factual allegations appear not in the "Complaint" itself, but in the exhibits. This Court reads all of the documents together.

violation of the Age Discrimination in Employment Act of 1967, as amended."[4] (Pl.'s Compl. Ex. 2, at 15.) The EEOC was unable to conclude that Plaintiff's allegation established a violation of any statute. Accordingly, the EEOC closed Plaintiff's case and issued a notice of right to sue on August 28, 2007.

In or about August 2010, Plaintiff allegedly applied to WellPoint for a data entry clerk position.[5] On or about September 10, 2010, WellPoint's Human Resources Manager allegedly advised Plaintiff that she "was ineligible for rehire due to a 'No Call, No Show' discharge." (*Id.* at 14.) On September 13, 2010, Plaintiff filed a second charge of discrimination against WellPoint, this time alleging that WellPoint retaliated against her in violation of Title VII. Plaintiff specifically charged that WellPoint failed to hire her in retaliation for filing the aforementioned charge of discrimination against WellPoint in 2007.

As to GCA, Plaintiff alleges that she began employment with GCA as a janitorial employee in January 2009. Plaintiff alleges that she "was involved in a car accident on April 11, 2010 and terminated from job [sic] while under the doctor's care." (Pl.'s

---

[4] The charge of discrimination attached to Plaintiff's Complaint was filed against "Anthem Health Plans of Virginia." This Court assumes without deciding that Defendant WellPoint is the successor by merger to Anthem, Inc. and WellPoint Health Networks, Inc. *See* http://www.wellpoint.com/AboutWellPoint/CompanyHistory/index.htm (last visited May 24, 2011).

[5] Plaintiff alleges that she "ha[d] been asked to apply for a position with the Wellpoint Companies Inc. and if rejected I could file a retaliation charged [sic]. I have enclosed documentation attached . . . ." (Pl.'s Compl. ¶ 5.) The attached documentation appears to be an e-mail receipt of Plaintiff's resume submission to "ACS, Inc." (*See* Pl.'s Compl. Ex. 2, at 9.) A handwritten note by Plaintiff explains that WellPoint "has an Agency by the name of ACS, Inc." (*Id.*) Although WellPoint asserts that "ACS is an entirely separate company from WellPoint; WellPoint contracts data entry work to ACS and does not have any positions for data entry clerks," (Mem. Supp. WellPoint's Mot. Dismiss 4 n.4), this Court must accept as true Plaintiff's allegations at this procedural stage.

Compl. ¶ 3.) More specifically, Plaintiff alleges that she took a medical leave of absence under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, on May 20, 2010. Plaintiff alleges that she received a letter dated August 13, 2010 from GCA's Human Resources Director, which stated:

> On May 20, 2010, you went out on FMLA for personal health reasons. As recent as August 6, 2010, GCA Corporate Benefits Department Requested that you provide GVA with an update of your status. On August 10, 2010, GCA confirmed that you had been released from your treating Physician on July 13, 2010 to work with no restrictions. Your failure to return . . . is considered job resignation [and] abandonment . . . ."

(Pl.'s Compl. Ex. 2, at 13.) Plaintiff further alleges that her employment was terminated on August 13, 2010, "after my employer refused to permit to me to return to my regular work location. Instead, I was offered a different location, which would have caused me to lose benefits related to my disability. (*Id.*)[6]

Plaintiff filed a charge of discrimination against GCA on September 8, 2010, alleging that her termination from GCA was the result of discrimination in violation of the ADA. (*Id.*) This action against GCA and WellPoint followed.

On December 27, 2010, WellPoint filed the instant Motion to Dismiss or, in the Alternative, Sever Claims. GCA similarly moved to dismiss for failure to state a claim on March 2, 2011.[7] In the alternative, GCA asserts that the action should be dismissed

---

[6] In paragraph three of Plaintiff's Complaint, Plaintiff alleges that WellPoint terminated her employment on April 13, 2010. In light of the allegations in Plaintiff's charge of discrimination, however, it appears that "April 13" is a typographical error, instead meant to read "August 13."
[7] On February 15, 2011, the Clerk entered default as to GCA. GCA, who had not been properly served, moved to set aside the Clerk's entry of default on March 2, 2011. That same day, GCA requested an extension of time in which to file responsive pleadings and filed the instant motions to dismiss. On March 23, 2011, this Court set aside the default, granted GCA's motion for an

4

pursuant to Rule 12(b)(5) because Plaintiff failed to serve GCA with process in accordance with Rule 4. Plaintiff's time to respond has expired.[8] These matters are ripe for decision.

## II.

WellPoint contends that Plaintiff's Title VII claim should be dismissed for two reasons: (1) Plaintiff's Complaint fails to state a *prima facie* claim of retaliation, and (2) Plaintiff failed to exhaust her administrative remedies. Because a plaintiff's failure to exhaust administrative remedies deprives federal courts of subject matter jurisdiction over Title VII claims, *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), the Court turns first to whether Plaintiff has exhausted her administrative remedies in this case.

### A.

In order to exhaust administrative remedies, a Title VII plaintiff must first file a charge of discrimination with the EEOC. *Jones*, 551 F.3d at 300. The plaintiff may initiate a civil action based on the claims raised in her EEOC charge only after receipt of a right-to-sue letter. *Puryear v. County of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) (citing 42 U.S.C. § 2000e-5(f)(1)). As the Fourth Circuit recently explained in *Jones v. Calvert*,

---

extension of time, and deemed GCA's motions to dismiss timely filed. (*See* Mem. Op. (Mar. 23, 2011), ECF No. 36.)

[8] On March 16, 2011, Plaintiff responded to GCA's various motions concerning service of process and the clerk's entry of default. She did not, however, address GCA's Motion to Dismiss Pursuant to Rule 12(b)(6). Although GCA and WellPoint each properly filed *Roseboro* notices with their motions to dismiss, this Court on its own motion granted Plaintiff additional time to respond. (Order (Apr. 4, 2011) (directing Plaintiff to respond on or before April 25, 2011).)

5

> The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex.

551 F.3d at 300 (internal citations omitted) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).

The court further explained, however, that "'a plaintiff asserting a Title VII claim of retaliation for filing a previous EEOC charge . . . may raise the retaliation claim for the first time in federal court,'" because a claim of retaliation for filing an EEOC charge is "'like or reasonably related to and growing out of such allegations.'" *Id.* at 301–02 (quoting *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)).

In this case, Plaintiff filed a charge of age discrimination against WellPoint in July of 2007. The EEOC issued a notice of right to sue with respect to that charge on August 28, 2007. In 2010, Plaintiff filed a charge of discrimination against WellPoint alleging that WellPoint refused to rehire her in retaliation for having filed the 2007 charge of discrimination.

Although there is no indication that Plaintiff received a notice of right to sue with respect to her 2010 retaliation claim, *Jones* makes clear that Plaintiff was free to raise this claim for the first time in federal court. *See Jones*, 551 F.3d at 301–02. Plaintiff's Title VII claim is not barred for failure to exhaust administrative remedies.

Having found that jurisdiction is proper, the Court now turns to whether Plaintiff's Complaint states a Title VII claim for which relief can be granted.

## B.

### i.

Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). While the complaint need not provide "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555, 27 S. Ct. at 1964–65. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 27 S. Ct. at 1965. In short, the Court must assume plaintiff's well-pleaded factual allegations to be true and determine whether those allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When interpreting a *pro se* complaint, the court must afford the complaint a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The court need not, however, attempt "to discern the unexpressed intent of the plaintiff." *Id.* As Judge Wilkinson noted in *Beaudett v. City of Hampton*, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in

the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

ii.

WellPoint asserts that Plaintiff's Complaint must be dismissed because "Plaintiff has not alleged facts demonstrating that she can establish a *prima facie* case of retaliation." (Mem. Supp. WellPoint's Mot. Dismiss 3.) A *prima facie* case of retaliation requires the plaintiff to prove (1) that the plaintiff engaged in protected activity; (2) that the defendant took adverse employment action against her; and (3) that a causal link existed between the protected activity and the adverse employment action. *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004). WellPoint contends that Plaintiff's "complaint fails to allege the second and third elements." (Mem. Supp. WellPoint's Mot. Dismiss 4.)

As an initial matter, this Court notes that "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15, 122 S. Ct. 992, 997–99 (2002)). Rather, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1956).

Plaintiff alleges that she applied for a position with WellPoint in September 2010, but was advised by a Human Resources Manager that she "would not be rehired and/or reinstated" because she "was ineligible for rehire due to a 'No Call, No Show' discharge." (*See* Pl.'s Compl. ¶ 5; *id.* Ex. 2, at 9, 14.) Plaintiff alleges that she

"believe[s] that [she] was not rehired and/or being considered for reinstatement in retaliation for filing an EEOC charge ...." (*Id.* Ex. 2, at 14.)

In WellPoint's view, "[t]he amount of time between the EEOC charge [Plaintiff] filed in 2007 and the alleged failure to hire in 2010 is simply too long to sustain a causal connection" between the protected activity and the alleged adverse action. (Mem. Supp. WellPoint's Mot. Dismiss 4 (citing *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998); *Roberts v. Holder*, 1:08CV 1011 (LMB/TRJ), 2009 U.S. Dist. LEXIS 20898, at *25 (E.D. Va. Mar. 13, 2009)).) This argument is unpersuasive. "[A] mere lapse in time between the protected activity and the adverse employment action does not inevitably foreclose a finding of causality. This is especially true in the context of a reinstatement case ..." *Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir. 2007) (quoted in *Templeton v. First Tenn. Bank, N.A.*, No. 10-1753, 2011 U.S. App. LEXIS 8379, at *5 (4th Cir. Apr. 22, 2011) (per curiam)).[9]

Plaintiff has not, however, alleged any facts in support of her conclusory assertion that WellPoint refused to rehire her in retaliation for her having filed an EEOC complaint in 2007. To the contrary, Plaintiff alleges that a Human Resources Director advised that she was ineligible for rehire because she was previously discharged for "No Call, No Show." (Pl.'s Compl. Ex. 2, at 14.) In addition, Plaintiff has not alleged the existence of any job openings.

---

[9] In a recent unpublished opinion, the Fourth Circuit held "that the district court erred when it determined that [the plaintiff's] retaliation claims should be dismissed at the motion to dismiss stage because too much time had elapsed between [the plaintiff's] harassment complaint and Defendants' refusal to rehire her." *Templeton*, 2011 U.S. App. LEXIS 8379, at *4. That case involved a lapse of greater than two years between the plaintiff's resignation and the defendant's alleged failure to hire. *Id.* at *2.

9

Plaintiff's contention that WellPoint retaliated against her amounts to no more than a "[t]hreadbare recital[] of the element[] . . . supported by [a] mere conclusory statement[] . . . ." *Iqbal*, 129 S. Ct. at 1949. Plaintiff's Title VII claim against WellPoint will therefore be dismissed.[10]

### III.

Turning to Plaintiff's claim against GCA, Plaintiff alleges that GCA wrongfully discharged her in violation of Title I of the ADA, 42 U.S.C. §§ 12101 *et seq.* GCA contends that Plaintiff's Complaint should be dismissed for failure to state a claim or for insufficient service of process.

This Court need not reach either issue. A plaintiff alleging wrongful termination in violation of the ADA must exhaust her administrative remedies prior to filing suit in federal court. *See* 42 U.S.C. § 12117(a) (providing that "[t[he powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964" apply "to any person alleging discrimination on the basis of disability in violation of [the ADA]"). Plaintiff was therefore required to file a charge of discrimination with the EEOC and obtain notice of her right to sue before filing suit against GCA. *See Puryear*, 214 F.3d at 518.

The record reflects that Plaintiff filed a charge of discrimination against GCA in September 2010. (*See* Pl.'s Compl. Ex. 2, at 13.) There is no indication, however, that

---

[10] Because Plaintiff has not sufficiently alleged this third element, the Court need not address whether Plaintiff has sufficiently alleged any adverse action. (*See* Mem. Supp. WellPoint's Mot. Dismiss 4 ("All Turpin alleges is that someone from WellPoint told her that she was ineligible to be rehired; this is not the same as failure to hire. Indeed, it is not clear from Turpin's pleading that WellPoint had a job opening or that she was not hired for any position.").)

Plaintiff ever received a notice of right to sue on this claim. Plaintiff has therefore failed to meet her burden of establishing subject matter jurisdiction. *See Jones*, 551 F.3d at 300 (holding that failure to exhaust administrative remedies deprives the court of subject matter jurisdiction); *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999), *cert. denied, Pinkley, Inc. v. Servacek*, 528 U.S. 1155, 120 S. Ct. 1161 (2000) (explaining that the facts which provide jurisdiction "must be affirmatively alleged in the complaint").[11]

## IV.

For the reasons stated above, Plaintiff's Complaint will be dismissed without prejudice. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 25, 2011
Richmond, VA

---

[11] Although the Court need not reach the merits of Plaintiff's ADA claim against GCA, the Court notes that Plaintiff has not alleged that she is a qualified individual with a disability under the ADA. To the contrary, Plaintiff's own allegations indicate that her physician released her to work with no restrictions prior to her termination from GCA. (*See* Pl.'s Compl. Ex. 2, at 13.)